**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TINA R. HARO,
                            *Plaintiff*,

and

RUBEN ARMENDARIZ; FRANK
BROWN; IVAN CARMONA; KENNETH
DAWSON; DONALD GILLENWATER;
JAMES GOLDSWORTHY; ROBERT
GONZALEZ; PAUL GUTIERREZ; KARL
KOLLER; MICHAEL LIMON; PATRICK
MAREK; MIGUEL MARTINEZ; EDDIE
MATAMOROS; RICARDO MOLINA;
ALAN NAEOLE; TONY TRAN
NGUYEN; MICHAEL PALMA; BRANDI
PILATO; JOSEPH ST. GEORGES;
ARTHUR SKUBIK; THOMAS
STAFFORD; CAREY STEINER; ERVIN
STONE; MOISES TORRES; CARLOS
VARGAS; WAYNE WEISEHAM,
                            *Plaintiffs-Appellees*,

v.

CITY OF LOS ANGELES, a Municipal
Corporation,
                            *Defendant-Appellant*.

Nos.  12-55062
         12-55310

D.C. No.
2:02-cv-09587-
CBM-SH

JUAN M. ACHAN,
            *Plaintiff*,

            and

GREGORY J. ACEVEDO; ANGEL E.
ALVAREZ; RANDALL ARAIZA; STEVE
BLOCH; RANDALL W. BRASS; KEVIN
A. BURGESS; ALFRED CAMACHO;
JOSE R. CAMUNAS; S. CARRASCO;
JOSEPH COLEMAN; RICKY D.
CRAWFORD; WILLIAM D. DUCAT;
ENRIQUE C. DUQUE; DANIEL J.
FAULKNER; PABLO FLORES; GUS
GAETA; CESAR A. GARCIA; DIONISIO
L. GARZA; HENRY M. GASBARRI;
JUAN GONZALEZ; GEORGE G.
GORDON; ENRIQUE GRACIANO;
DAVID GRIJALVA; RUDY GUTIERREZ;
DIANA IGAWA; MATT JOHNSON;
ELDON A. KARRATTI; SCOTT LAZAR;
ALEXANDER LEMUS; SHAWN
LENSKE; JULIO MALDONADO; CECIL
J. MANRESA; JUAN M. MAREZ;
MANUEL MARTINEZ; OSCAR
MARTINEZ; EDUARDO L. MENA;
RICARDO I. MENA; JOE LOUIS
MENDOZA; DAVID R. MIRANDA;
GABRIEL OLMEDO; TONY PORRATA;
KRISTINA RIVERA; MIGUEL
RODRIGUEZ; JOSE R. SANCHEZ; ORIN
SAUNDERS; CATHLEEN SCARVERS;
SUSAN RAE SPENCER; CRAIG J.

Nos.   12-55076
       12-55303

D.C. No.
2:04-cv-04334-
CBM-SH

OPINION

THOMPSON; EDWARD TORREZ;
ROBERT A. VALLES; ALBERTO
VARGAS; CHEROMEE BRIDGET
WOLD; LJUBOMIR ZAJORAC,
                *Plaintiffs-Appellees*,


                v.


CITY OF LOS ANGELES,
                *Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, Senior District Judge, Presiding

Argued and Submitted
October 11, 2013—Pasadena, California

Filed March 18, 2014

Before: Harry Pregerson and Richard C. Tallman, Circuit
Judges, and Michael H. Simon, District Judge.*

Opinion by Judge Pregerson

---

* The Honorable Michael H. Simon, United States District Judge for the
District of Oregon, sitting by designation.

## SUMMARY[**]

### Labor Law

Affirming the district court's summary judgment in an action under the Fair Labor Standards Act, the panel held that City of Los Angeles fire department dispatchers and aeromedical technicians were entitled to standard overtime pay because they did not fall within an exemption for employees "engaged in fire protection."

The panel held that these employees were not exempt from standard overtime pay because they did not have the legal authority and responsibility to engage in fire suppression under FLSA §§ 207(k) and 203(y).

The panel held that the statute of limitations should be extended from two to three years because of the City's willful violation of the FLSA. It held that liquidated damages should be awarded because the City could not show good faith or reasonable grounds for violating the FLSA. Agreeing with the Sixth and Seventh Circuits, and disagreeing with the Fifth and Eleventh Circuits, the panel held offsets for overtime payments the City had already made should be calculated on a week-by-week basis.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

David A. Urban (argued), and Brian P. Walter, Liebert Cassidy Whitmore, Los Angeles, California, for Defendant–Appellant.

Thomas A. Woodley (argued), Woodley & McGillivary, Washington, D.C.; Alan S. Kaufman, Chamberlain, Kaufman & Jones, Albany, New York, for Plaintiffs–Appellees.

## OPINION

PREGERSON, Circuit Judge:

Because of an exemption written into the Fair Labor Standards Act ("FLSA"), Los Angeles City employees "engaged in fire protection" (i.e. firefighters) do not receive standard overtime pay—time and a half for all hours worked over forty in one workweek. Instead, firefighters receive overtime only after working 212 hours in a twenty-eight-day period.

Plaintiff fire department dispatchers and fire department aeromedical technicians (paramedics assigned to air ambulance helicopters) were denied standard overtime pay because the City of Los Angeles (the "City") classified them as employees "engaged in fire protection." Plaintiff dispatchers and aeromedical technicians argue that they are not "engaged in fire protection," and thus are entitled to standard overtime pay.

Also at issue are: (1) the proper statute of limitations, (2) liquidated damages, and (3) offsets for previously-paid overtime.

We have jurisdiction under 28 U.S.C. § 1291.

For the reasons stated below, we affirm the district court's findings that Plaintiffs are entitled to standard overtime pay; the statute of limitations should be extended from two to three years because of the City's willful violation of the FLSA; liquidated (i.e. double) damages should be awarded because the City cannot show good faith or reasonable grounds for violating the FLSA; and offsets should be calculated on a week-by-week basis.

## I.  Factual Background

### A.  Plaintiff Dispatchers and Aeromedical Technicians

Plaintiffs are employed by the City of Los Angeles Fire Department as either dispatchers or aeromedical technicians.

### i.  Dispatchers

Fire Department dispatchers work out of the Operations Control Division, located four levels below City Hall in Los Angeles.  Dispatchers receive emergency calls and send a dispatch message to the fire station and any specific vehicles to be dispatched.  Dispatchers are also responsible for supporting field employees.  If the incident commander at the scene of the incident determines that additional resources are needed, this request goes to the dispatcher.  If the incident is large enough, dispatchers are sent to the scene to act as liaisons between the incident commander and Operations

Control Division, tracking the incident and dispatching further resources. No dispatcher, however, has worked at a fire scene for at least ten years.

During their shifts, dispatchers are not required to have any fire protective gear with them, nor are they required to handle firefighting equipment. They do not go into the field to physically engage in fire or rescue operations.

Dispatchers must have worked for the Fire Department as either a firefighter or a paramedic for at least four years before becoming a dispatcher. The majority of dispatchers, including Plaintiffs, were trained as firefighters.

### ii. Aeromedical Technicians

The second set of plaintiffs are the Fire Department's aeromedical technicians. Aeromedical technicians work within the Air Operations Unit, providing support services for helicopters designated as air ambulances. These technicians must be certified and have experience as both firefighters and as paramedics.

Aeromedical technicians spend the majority of their flights administering medical care. Medical duties consist of assessing, treating, and possibly transporting a patient from an accident scene or from a rescue ambulance that has already removed the patient from the scene. Other responsibilities include scene security, rescue operations, and helicopter equipment maintenance.

Aeromedical technicians are not outfitted with the same gear used by firefighters. Technicians wear fire-resistant

Nomex flight suits for protection in the event of a fire on the helicopter.  These suits are not designed to fight fires.

Air Operations Unit helicopters are occasionally used during brush fires to drop water and to map out the fires.  The helicopter flies to a "helispot"—a designated area close to a water source.  If an air ambulance helicopter is used to drop water, aeromedical technicians will load a hose and fittings onto the helicopter.  There are times when aeromedical technicians arrive at the helispot before the firefighters.  Although it is not their primary responsibility to do so, they will fill the helicopter with water and fuel so that the equipment is ready for immediate use when the firefighters arrive.  Aeromedical technicians do not ride in the helicopter when it drops water on the fire.

## B.  Overtime Pay

In calculating overtime payments, the City classified Plaintiff dispatchers and aeromedical technicians as employees "engaged in fire protection" under the FLSA, 29 U.S.C. § 207(k) and § 203(y).  In doing so, the City denied Plaintiffs the standard overtime pay of one and one-half times the regular rate for any hours worked over forty in a week.  29 U.S.C. § 207(a).  Instead, the City used the § 207(k) calculation, which requires employees to work a total of 212 hours during a work period of twenty-eight days before earning overtime compensation.

Using the § 207(k) calculation, the City had the option to lower the number of days in the pay period to twenty-seven, which lowered the overtime threshold to 204 hours.  *See* 29 C.F.R. § 553.230.  Thus, Plaintiffs received overtime pay only if they worked more than 204 hours in a twenty-seven-

day work period.  Plaintiffs regularly worked nine twenty-four-hour shifts every twenty-seven-day work period, totaling 216 hours.

## II. Statutory Background

The Fair Labor Standards Act of 1938 requires employers to pay their employees who work more than forty hours in a workweek overtime compensation at one and one-half times the regular rate.  29 U.S.C. § 207(a).  Section 207(k), however, exempts (i.e. denies regular overtime pay to) employees "engaged in fire protection . . . activities." 29 U.S.C. § 207(k).  As stated above, under § 207(k), an employer must compensate "fire protection" employees with overtime payments only after the employee works more than 212 hours in a twenty-eight-day period.  *Id*.  Section 207(k) creates a ratio of days in the period to number of hours worked, and if the number of days in the work period is decreased to twenty-seven, the number of hours an employee must work before earning overtime is decreased to 204.  *See* 29 C.F.R. § 553.230.

In 1999, Congress enacted 29 U.S.C. § 203(y) to define "[e]mployee in fire protection activities" as:

> [A]n employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who–
>
>> (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a

municipality, county, fire district, or State; and

(2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

In drafting § 203(y), Congress adopted some of the preexisting language from 29 C.F.R. § 553.210, a Department of Labor regulation defining "fire protection activities." But in doing so, Congress chose to exclude parts of this Department of Labor definition. One of these exclusions reads as follows.

[A]ny employee . . . who performs activities which are required for, and directly concerned with, the prevention, control or extinguishment of fires, including such incidental nonfirefighting functions as housekeeping, equipment maintenance, lecturing, attending community fire drills and inspecting homes and schools for fire hazards. . . . The term would also include rescue and ambulance service personnel if such personnel form an integral part of the public agency's fire protection activities.

29 C.F.R. § 553.210 (1991). Thus, this old Department of Labor definition, which includes "incidental nonfirefighting functions" and "rescue and ambulance service personnel" who "form an integral part of the public agency's fire protection activities," is past history. It is not part of the present FLSA definition of "fire protection activities."

## III.    Procedural History

### A.  Prior Litigation

In 1985, the Supreme Court held that FLSA overtime requirements apply to governmental functions. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 531 (1985). That same year, the City sent the Department of Labor a letter with twenty questions regarding application of the FLSA to City employees, including Fire Department paramedics. The City did not inquire as to dispatchers or aeromedical technicians.

In 1997, in *Acrich v. City of Los Angeles*, single-function paramedics (those paramedics not also trained as firefighters) sued the City, asserting they were improperly classified under § 207(k). In 1999, the City again contacted the Department of Labor regarding whether single-function paramedics were "fire protection" employees under the FLSA. The City settled *Acrich* in 2000, after which it began paying single-function paramedics the standard overtime rate of time and a half for hours worked over forty in a workweek.

In 1999, in *Cleveland v. City of Los Angeles*, dual-trained paramedics (those trained as both paramedics and firefighters) and Quality Improvement Analysts sued the City, asserting that they too had been improperly classified under § 207(k). After a bench trial, the district court held that the City had improperly classified these employees. The district court also ruled that the City had not acted reasonably or in good faith, and awarded liquidated damages equal to the plaintiffs' back pay. The City appealed as to the paramedics, but not as to the Quality Improvement Analysts. This court affirmed the district court's ruling in August 2005. *See*

*Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005) (Pregerson, J.), *cert. denied*, 546 U.S. 1176 (2006).[1]

## B.  The Complaint

In their complaint, Plaintiffs alleged that the City violated the FLSA by compensating them as "fire protection" employees under § 207(k).  Plaintiffs argued that they were similarly situated to the paramedics in *Cleveland*, so the decision in *Cleveland* should apply with equal force to Plaintiffs.  Plaintiffs also asserted that, under 29 U.S.C. § 255(a), the statute of limitations should be extended from two years to three years based on the City's willful violation of the FLSA, and, under 29 U.S.C. § 216(b), mandatory liquidated damages should be awarded because of the City's lack of good faith or reasonableness in complying with the FLSA.

The parties then filed cross-motions for summary judgment, based on stipulated facts.

## C.  District Court's First Ruling

The district court granted Plaintiffs' summary judgment motions.  Applying *Cleveland*, the district court determined that dispatchers and aeromedical technicians are not "engaged in fire protection" under § 207(k) and § 203(y) because they are not "responsible for fire suppression" as that term would

---

[1] While *Cleveland* was being litigated, Congress enacted § 203(y).  On appeal, the *Cleveland* court held that, under either the § 203(y) or the Department of Labor definition, dual-trained paramedics were not engaged in fire suppression.  420 F.3d at 991.

ordinarily be understood. Like the plaintiffs in *Cleveland*, Plaintiffs "do not actively and physically fight fire."

The district court also held that a three-year statute of limitations applies. Evidence that the City had disregarded the FLSA by failing to inquire about uncertain FLSA coverage issues, especially after its involvement in *Cleveland*, showed willfulness.

The district court then ruled that Plaintiffs were entitled to liquidated damages. The district court found that the City had willfully violated the FLSA, which established the City's lack of good faith or reasonable grounds in complying with the FLSA.

**D. Calculating Damages**

Following the district court's order, the parties began calculating damages. The parties reached an impasse over how to offset those overtime payments the City had already made to Plaintiffs using the twenty-seven-day work period schedule.

Again, based on stipulated facts, the parties filed cross-motions for summary judgment on the damages issue. The City presented three methods of calculation. The first method would allow the City to offset previously-paid overtime cumulatively over the entire three-year period for which the City was found liable. The second alternative applied the offsets within the twenty-seven-day work period Defendants had previously used to establish overtime. The third alternative applied the offsets on a two-week basis. Plaintiffs presented one method of calculation: offsets must be applied on a workweek-by-workweek basis.

### E.  District Court's Second Ruling

The district court issued an order selecting Plaintiffs' calculation method.  The district court first noted that circuits are split over whether a workweek-by-workweek method must be used, and the Ninth Circuit has not yet addressed the issue.  While the Sixth and Seventh Circuits have ruled that a week-by-week offset must be used, the Fifth and Eleventh Circuits have held that offsets may be applied cumulatively over longer periods of time.  The district court was persuaded by the reasoning of the Sixth and Seventh Circuits.

### F.  The Appeal

The City maintains that, because dispatchers and aeromedical technicians contribute in a direct and vital manner to the Fire Department's suppression of fires, they meet the requirements of § 203(y) and thus come within the scope of § 207(k).  The City also contends that, with the absence of any indicia that Plaintiffs had been misclassified, the City did not willfully violate the FLSA under § 255(a), and so a two-year, rather than three-year, statute of limitations applies.  And for the same reasons the City contends that it had not acted willfully, it also contends that it acted in good faith, and so should not be liable for liquidated damages under § 216(b).  Finally, the City argues that the district court improperly applied Plaintiffs' week-by-week offset calculation, giving Plaintiffs a windfall.  Plaintiffs maintain that the district court correctly applied and interpreted all relevant portions of the FLSA.

## IV.   STANDARD OF REVIEW

This court reviews both the granting of summary judgment and rulings regarding exemptions to the FLSA *de novo*. *See Solis v. Washington*, 656 F.3d 1079, 1083 (9th Cir. 2011).

## V.  DISCUSSION

### A.  FLSA Exemption

The FLSA is to be construed liberally in favor of employees; exemptions are narrowly construed against employers. *See Cleveland*, 420 F.3d at 988 (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). FLSA exemptions will not be found "except [in contexts] plainly and unmistakably within [the given exemption's] terms and spirit." *Id.* (citing *Arnold*, 361 U.S. at 392) (internal quotation marks omitted).

#### 1. Definitions of Employee "Engaged in Fire Protection" Under § 207(k) and § 203(y)

Section 207(k) exempts employees "engaged in fire protection" from the standard overtime pay of time and a half for all hours worked over forty per week.

Section 203(y) in turn defines "employee in fire protection" as an employee who: (1) is trained in fire suppression; (2) has the legal authority and responsibility to engage in fire suppression; (3) is employed by a fire department; and (4) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk. The City

bears the burden of proving that Plaintiffs meet all these requirements.  *See Cleveland*, 420 F.3d at 988.  At issue in this case is the second requirement—legal authority and responsibility to engage in fire suppression.

### 2.  Definitions Under *Cleveland*

In *Cleveland*, we held that dual-function paramedics (those trained as both firefighters and paramedics) were entitled to standard overtime pay because they are not "engaged in fire protection" under § 207(k) and § 203(y). 420 F.3d at 991.  We implemented a plain-meaning, common-sense reading of the term "responsibility" in § 203(y) to find that, for these paramedics to have a "responsibility to engage in fire suppression," they "must have some real obligation or duty to do so.  If a fire occurs, it must be their job to deal with it."  *Id*. at 990.

We then applied the § 203(y) definition of "responsibility to engage in fire suppression" to paramedics, observing that "when they arrive at fire scenes, paramedics treat injured people, standby for patient care, and take exhausted firefighters to the hospital; they do not assist with any fire suppression."  *Id*. at 984. We went on to list several key factors to determine whether paramedics should be considered "fire protection" employees: (1) dual-function paramedics do not carry firefighting equipment or breathing apparatuses, (2) the dispatcher would not know whether he or she was sending a single- or dual-function paramedic to a call, (3) paramedic ambulances are not regularly dispatched to fire scenes, (4) dual-function paramedics are not expected to wear fire-protective gear, (5) dual-function paramedics are only expected to perform medical services, and (6) no paramedic had ever been ordered to perform fire suppression.

*Id.* at 990.  Applying these factors, we concluded that the City had not shown that dual-function paramedics were "engaged in fire protection" under § 207(k).  *Id.*  Thus, the City was required to pay dual-function paramedics the standard overtime rate of time and a half for all hours worked over forty in a week.[2]  *Id*. at 991.

### 3.  Application to Dispatchers

Under the plain meaning of § 203(y), dispatchers do not have the "responsibility to engage in fire suppression."  The term most logically refers to those who are dispatched to the fire scene and actively engage the fire.  Plaintiff dispatchers, working from the City Hall basement, do not suppress the fire; they send firefighters to the scene to suppress the fire.

*Cleveland* supports this conclusion.  In *Cleveland*, we associated fire suppression with actions that occur at the physical scene of the fire itself.  We noted that "when [paramedics] *arrive at fire scenes*. . . . they do not assist with any fire suppression."  420 F.3d at 984 (emphasis added).  In fact, dispatchers are even further removed from fire suppression than the paramedics in *Cleveland*, since those

---

[2] Other circuits have relied on *Cleveland*'s reasoning.  In *Huff v. Dekalb County*, the Eleventh Circuit concluded that dual-function paramedics who, unlike the paramedics in *Cleveland*, could be ordered to extinguish fires, were responsible for fire suppression and thus exempt under § 207(k).  516 F.3d 1273, 1279–80 (11th Cir. 2008).  Likewise, the Eighth Circuit in *Lawrence v. City of Philadelphia* held that dual-function paramedics who, like the paramedics in *Cleveland*, had no duty or expectation to put out any fires, were not exempt under § 207(k), even though they occasionally held fire hoses.  527 F.3d 299, 313–16 (3d Cir. 2008).

paramedics at least traveled to the fire scene itself to perform medical services.

Furthermore, dispatchers need not be trained in fire suppression. While Plaintiffs in this case all happen to have been trained as firefighters, dispatchers trained only as paramedics do the exact same job and are paid standard overtime on a forty-hour-workweek basis.

In its defense, the City argues that "responsibility to engage in fire suppression" should be expanded to all those employees who make a direct causal contribution to combating fire, whether or not they are physically present at the fire itself. We decline such an invitation to expand the FLSA's definition. In drafting § 203(y), Congress omitted parts of the Department of Labor regulation that included activities causally related to combating fire, such as "housekeeping," "equipment maintenance," and "inspecting homes and schools for fire hazards." Congress chose not to include these important functions in its definition of "fire suppression." *See* 29 C.F.R. § 553.210.

The City selectively quotes from the legislative history of § 207(k) and § 203(y) to show Congress's intent to create an expansive definition of "employee engaged in fire suppression activities." As we noted in *Cleveland*, however, courts "can only look to legislative intent when a statute is ambiguous." 420 F.3d at 990, n.11 (citing *HUD v. Rucker*, 535 U.S. 125, 132 (2002)). Here, because the statute is clear on these facts, review of the legislative history is unnecessary.'

### 4.  Application to Aeromedical Technicians

Like dispatchers, aeromedical technicians do not "engage in fire suppression."  Helicopter support operations mainly consist of medical duties, with the air ambulance substituting for a road ambulance.  Other duties include setting up equipment, loading hoses and fittings onto helicopters, filling the helicopters with water, establishing secure landing sites, and evacuating people.  These technicians do none of the activities normally associated with suppressing a fire.

Similar to the paramedics in *Cleveland*, aeromedical technicians are not required to wear full fire protective gear, regardless of the particular air ambulance helicopter assignment.  Even when an air ambulance is called on to drop water on a fire, aeromedical technicians never go with the helicopter.  And although aeromedical technicians perform more duties than road ambulance paramedics, these duties are limited to support activities, not fire suppression.

For these reasons, we affirm the district court's holding that Plaintiff dispatchers and aeromedical technicians do not "engage in fire suppression" and thus should not be denied standard overtime pay.

### B.  Statute of Limitations

Successful FLSA plaintiffs can recover for unlawfully withheld overtime pay for two years back from the filing date of a cause of action. 29 U.S.C. § 255(a).  When a violation is "willful," however, the statute of limitations extends to three years.  *Id*.  To show willfulness, a plaintiff must demonstrate that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the

statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). An employer who knows of a risk that its conduct is contrary to law, yet disregards that risk, acts willfully. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908–09 (9th Cir. 2003). The employer must take "affirmative action to assure compliance[.]" *Id*. at 909. Prior FLSA violations, "even if they were different in kind from the instant one and not found to be willful," put the employer "on notice of other potential FLSA requirements." *Chao v. A-One Medical Servs., Inc*., 346 F.3d 908, 919 (9th Cir. 2003).

The City's conduct in this case was willful, thus entitling Plaintiffs to a three-year statute of limitations. The City has extensively litigated the meaning of § 207(k). In 2002, the district court in *Cleveland* ruled that the City was in violation of § 207(k) as to dual-trained paramedics and those who held desk job positions as Quality Improvement Analysts. The City did not appeal as to the Quality Improvement Analysts, and lost on appeal as to the paramedics. Yet at no time thereafter did the City take any steps to obtain an opinion letter from the Department of Labor regarding Plaintiffs' positions, although it had done so as to other employees. Ignoring these red flags and failing to make an effort to examine the positions at issue in this case show willfulness.

Also, the City itself appears not to have viewed dispatchers as "engaged in fire protection" until this case was underway. When this lawsuit began, the City had assigned dispatchers to the Bureau of Support Services, which included the Supply and Maintenance Division, Fire Facilities Division, and Operations Control Division. The Fire Department's Manual of Operations states that the primary objectives of the Bureau of Support Services include "the dispatching of resources and equipment to the scene of

emergencies; operation of the Department's . . . Dispatch Center . . . and the development, maintenance and repair of Fire Department Facilities." Three months before the parties entered into their mutual stipulation of facts, however, the City reassigned the dispatchers to the Bureau of Emergency Services, which, according to the Manual of Operations, includes "[a]ll personnel normally engaged in fire fighting . . . ." The timing of this reassignment provides further evidence that the City's behavior was willful.

Thus, we affirm the district court's finding that the City's conduct was willful and justifies a third year of withheld overtime pay.

## C. Liquidated Damages

In addition to overtime compensation, successful FLSA plaintiffs are entitled to liquidated damages in the amount of the unpaid overtime compensation (i.e. double damages). 29 U.S.C. § 216(b); *Chao*, 346 F.3d at 919–20. Double damages are the norm; single damages are the exception. *Chao*, 346 F.3d at 920. Liquidated damages are "mandatory" unless the employer can overcome the "difficult" burden of proving both subjective "good faith" and objectively "reasonable grounds" for believing that it was not violating the FLSA. *Alvarez*, 339 F.3d at 909, 910.

The facts outlined in Part B showing willfulness under § 255(a) also show a lack of good faith or reasonable grounds under § 216(b). The City clearly knew of the law because it had been a party in *Cleveland*, where it also paid liquidated damages.

We thus affirm the district court's grant of liquidated damages.

### D.  Offsets for Previously-Paid Overtime

Under the FLSA, 29 U.S.C. § 207(h)(2), an employer may credit overtime payments already made to employees against overtime payments owed to them under the FLSA.  The statute, however, does not specify the method to be used to calculate these overtime payments.  The statute simply states that "[e]xtra compensation . . . shall be creditable toward overtime compensation payable pursuant to this section." 29 U.S.C. § 207(h)(2).

In their cross-motions for summary judgment, the parties presented four different calculation methods.  Plaintiffs advanced one method: credits and offsets must be applied on a workweek-by-workweek basis.  The City argued that credits and offsets should be viewed as a whole and applied cumulatively over the entire period for which Plaintiffs claimed the City was liable.  Alternatively, the City contended that credits and offsets should be applied within the twenty-seven-day period the City had been using to calculate overtime.  As a final option, the City proposed that offsets be paid on a two-week-pay-period basis.  The district court agreed with Plaintiffs that credits and offsets must be applied on a workweek-by-workweek basis.

The district court correctly applied a week-by-week approach.  Section 207(a) sets forth the basic overtime standard, set at forty hours in a seven-day workweek and time and one-half for overtime.  To determine the overtime owed for each workweek, the total hours worked over forty is multiplied by one and one-half the regular rate.  Then, under

§ 207(h), the overtime already paid by the employer is determined and credited against the overtime owed.  While § 207(h) does not state whether credits must be determined on a workweek basis, it must still be read within the context of the overtime due under § 207(a), which is calculated on a workweek basis.  Under this reading, compensation already paid for work done within one workweek should not be transferrable and offset against overtime due in another workweek.  This makes sense because Plaintiffs are owed what they should have been paid had the City obeyed the law.

There is still, however, a split of authority over how to calculate offsets, and the Ninth Circuit has not yet decided the matter.  The reasoning from circuits supporting a week-by-week offset is persuasive.  In *Howard v. City of Springfield*, 274 F.3d 1141 (7th Cir. 2001), the Seventh Circuit disagreed with the defendant that offsetting on a workweek basis would create an undeserved windfall.  *Id.* at 1148.  The court noted that

> if the City were able to use premium payments [in a cumulative fashion], the City would be the recipient of the windfall, and in fact would be placed in a substantially better position than if it had complied with the overtime requirements of the FLSA all along. . . . It is contrary to the language and the purpose of the statute.

*Id*.

Likewise, in *Herman v. Fabri-Centers of America, Inc*., 308 F.3d 580 (6th Cir. 2002), the Sixth Circuit extensively reviewed the FLSA's plain language, caselaw, and § 207(h)'s

legislative history to find in favor of a workweek restriction. *Id*. at 586–90.

Both the Seventh Circuit in *Howard* and the Sixth Circuit in *Herman* note that the Department of Labor's regulations implementing the FLSA support prompt payment of overtime, suggesting that overtime payments should be credited within the same workweek in which they were paid:

> The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

*Howard*, 274 F.3d at 1148 (citing 29 C.F.R. § 778.106); *Herman*, 306 F.3d at 589.

The City cites alternative, yet unpersuasive, caselaw supporting a cumulative approach. In *Kolheim v. Glynn County*, 915 F.2d 1473 (11th Cir. 1990), the Eleventh Circuit held that previously-paid overtime can be cumulatively offset

against the damages calculated. Yet the court summarily decided the issue, citing no supporting authority. *Id*. at 1481.

Likewise, in *Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003), the Fifth Circuit affirmed the district court's cumulative offset calculation. Yet that case is inapposite, as the court explicitly stated that "§ 207(h) does not apply in this case," and that "§ 207(h), and the cases interpreting it, are inapplicable." *Id*. at 827.

We thus affirm the district court's decision that previously-paid overtime should be offset using a week-by-week calculation.

## VI.     CONCLUSION

Because Plaintiffs do not qualify as "employees engaged in fire protection" as defined by § 203(y), we **AFFIRM** the district court's finding that § 207(k)'s exemption does not apply to dispatchers and aeromedical technicians. Because the City acted in willful violation of the law, we **AFFIRM** the district court's findings that a three-year statute of limitations applies and liquidated damages are proper. And because the statutory language of § 207(h), as well as persuasive authorities, supports a workweek-by-workweek offset, we **AFFIRM** the district court's holding that this method of calculation must be used.