FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HECTOR NAVARRO; ANTHONY PINKINS; KEVIN MALONE; and REUBEN CASTRO, *Plaintiffs-Appellants*,<br><br>v.<br><br>ENCINO MOTORCARS, LLC, erroneously sued as Mercedes Benz of Encino, a corporation, *Defendant-Appellee*. | No. 13-55323<br><br>D.C. No. 2:12-cv-08051-RGK-MRW<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
February 11, 2015—Pasadena, California

Filed March 24, 2015

Before: Susan P. Graber and Kim McLane Wardlaw,
Circuit Judges, and James C. Mahan,* District Judge.

Opinion by Judge Graber

---

\* The Honorable James C. Mahan, United States District Judge for the District of Nevada, sitting by designation.

## SUMMARY[**]

### Labor Law

Affirming in part and reversing the dismissal of an action under the Fair Labor Standards Act, the panel held that "service advisors" who worked at a car dealership did not fall within a statutory exemption under 29 U.S.C. § 213(b)(10)(A) from the Act's overtime pay requirements for "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles."

Disagreeing with the Fourth and Fifth Circuits, the panel deferred to the United States Department of Labor's regulatory definitions, set out at 29 C.F.R. § 779.372(c), because the statute was ambiguous, and under the *Chevron* standard, the regulation was reasonable.

The panel reversed the dismissal of the FLSA overtime claim and supplemental state-law claims. It affirmed the dismissal of other federal claims not challenged on appeal.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

S. Keven Steinberg (argued), Fink & Steinberg, Los Angeles, California, for Plaintiffs-Appellants.

Todd B. Scherwin (argued), Karl R. Lindegren, and Colin P. Calvert, Fisher & Phillips LLP, Irvine, California, for Defendant-Appellee.

## OPINION

GRABER, Circuit Judge:

We consider here a question of first impression for our circuit: Are "service advisors" who work at a car dealership exempt from the overtime pay requirements of the Fair Labor Standards Act (FLSA) of 1938, 29 U.S.C. §§ 201–219, under 29 U.S.C. § 213(b)(10)(A), which exempts "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles"? Reviewing de novo, *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Jan. 26, 2015) (No. 14-920), we answer that question "no" and, accordingly, reverse the district court's holding to the contrary.

### FACTUAL AND PROCEDURAL HISTORY

Defendant Encino Motorcars, LLC, sells and services new and used Mercedes-Benz automobiles.[1] Defendant employed

---

[1] Because the district court dismissed this case under Federal Rule of Civil Procedure 12(b)(6), we take the facts alleged in the complaint as true. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

or employs Plaintiffs Hector Navarro, Mike Shirinian, Anthony Pinkins, Kevin Malone, and Reuben Castro as "service advisors." The complaint alleges:

> The job duties and obligations of . . . Service Advisors . . . are to meet and greet Mercedes Benz owners as they enter the service area of the dealership and then to evaluate the service and/or repair needs of the vehicle owner in light of complaints given them by these vehicle owners. Upon evaluation of the service needs of the vehicle, the Service Advisors . . . then solicit and suggest[] that certain service[s] be conducted on the vehicle to remedy the complaints of the vehicle owner by conducting certain repairs at [Defendant's dealership] and through [Defendant's] own mechanics. The Service Advisors . . . are also duty bound and obligated by [Defendant] to solicit and suggest that supplemental service be performed on the vehicle above and beyond that which is required in response to the initial complaints of the vehicle owner. The Service Advisors . . . then write up an estimate for the repairs and services and provide[] that to the vehicle owner. The vehicle is then taken to the mechanics at [Defendant] for repair and maintenance.
>
> As required by [Defendant] and oftentimes while the vehicle is with [Defendant's] mechanics, the Service Advisors . . . will then call the vehicle owner

and solicit and suggest that additional work be
performed on the vehicle at additional cost.

Defendant pays service advisors on a commission basis only;
Plaintiffs receive neither an hourly wage nor a salary.

In 2012, Plaintiffs filed this action alleging, among other
things, that Defendant has violated the FLSA by failing to
pay overtime wages. The district court dismissed the
overtime claim because, the court concluded, Plaintiffs fall
within the FLSA's exemption for "any salesman, partsman,
or mechanic primarily engaged in selling or servicing
automobiles." 29 U.S.C. § 213(b)(10)(A). Plaintiffs timely
appeal.[2]

## DISCUSSION

Title 29 U.S.C. § 207(a)(1) requires that employers pay
time-and-a-half for hours worked in excess of 40 per
workweek. But § 213(b)(10)(A) provides that "[t]he
provisions of section 207 of this title shall not apply with
respect to . . . any salesman, partsman, or mechanic primarily
engaged in selling or servicing automobiles, trucks, or farm
implements, if he is employed by a nonmanufacturing
establishment primarily engaged in the business of selling
such vehicles or implements to ultimate purchasers."
Defendant, as a car dealership, is a "nonmanufacturing

---

[2] The court dismissed Plaintiffs' other federal claims (claims 3, 5, and
7) on alternative grounds not challenged on appeal. For that reason, we
affirm the court's dismissal of those claims. The court also exercised its
discretion under 28 U.S.C. § 1367(c) to dismiss Plaintiffs' state-law
claims for lack of supplemental jurisdiction. Because we reverse the
dismissal of the overtime claim (claim 1), we also reverse the dismissal of
the state-law claims.

establishment primarily engaged in the business of selling . . . vehicles . . . to ultimate purchasers." *Id.* The question is whether each Plaintiff is a "salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles." *Id.*

Plaintiffs argue that we must defer to the United States Department of Labor's 2011 regulatory definitions, set out at 29 C.F.R. § 779.372(c). 76 Fed. Reg. 18,832-01 (Apr. 5, 2011). Those regulations state, in relevant part:

> Salesman, partsman, or mechanic.
>
> (1) As used in section 13(b)(10)(A), a salesman is an employee who is employed for the purpose of and is primarily engaged in making sales or obtaining orders or contracts for sale of the automobiles, trucks, or farm implements that the establishment is primarily engaged in selling. . . .
>
> (2) As used in section 13(b)(10)(A), a partsman is any employee employed for the purpose of and primarily engaged in requisitioning, stocking, and dispensing parts.
>
> (3) As used in section 13(b)(10)(A), a mechanic is any employee primarily engaged in doing mechanical work (such as get ready mechanics, automotive, truck, or farm implement mechanics, used car reconditioning mechanics, and wrecker mechanics) in the servicing of an automobile, truck or farm implement for its use and operation as such. . . .

29 C.F.R. § 779.372(c). As the agency explained in 2011, the regulatory definitions "limit[] the exemption to salesmen who sell vehicles and partsmen and mechanics who service vehicles." 76 Fed. Reg. at 18,838. Because Plaintiffs do not fit within any of those definitions, they are not exempt from the FLSA's overtime wage provisions. Defendant concedes that Plaintiffs do not meet the regulatory definitions, but counters that we should not defer to the regulation.

We conduct the familiar two-step inquiry to determine whether to defer to the agency's interpretation. *McMaster v. United States*, 731 F.3d 881, 889 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 160 (2014). "At step one, we ask 'whether Congress has directly spoken to the precise question at issue.'" *Id.* (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)). If so, then the inquiry is over, and we must give effect to the "unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843. But if the statute is silent or ambiguous, then we must determine, before step two, what level of deference applies. *McMaster*, 731 F.3d at 889. "If we determine that *Chevron* deference applies, then we move to step two, where we will defer to the agency's interpretation if it is 'based on a permissible construction of the statute.'" *Id.* (quoting *Chevron*, 467 U.S. at 843).

A. *At* Chevron *Step One, the Statute is Ambiguous.*

When construing a congressional enactment, "our inquiry begins with the statutory text." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). In addition, in the present context we must apply the background rule that "[t]he FLSA is to be construed liberally in favor of employees; exemptions are narrowly construed against employers." *Haro v. City of Los*

*Angeles*, 745 F.3d 1249, 1256 (9th Cir.), *cert. denied*, 135 S. Ct. 138 (2014). "FLSA exemptions . . . are to be withheld except as to persons plainly and unmistakably within their terms and spirit."**[3]** *Solis v. Washington*, 656 F.3d 1079, 1083 (9th Cir. 2011) (internal quotation marks omitted). "An employer who claims an exemption from the FLSA bears the burden of demonstrating that such an exemption applies." *Id.* (internal quotation marks omitted).

As noted, the statute exempts "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles." 29 U.S.C. § 213(b)(10)(A). The statute does not define the terms "salesman, partsman, or mechanic." Examining the statutory text and applying canons of statutory interpretation, we cannot conclude that service advisors such as Plaintiffs are "persons plainly and unmistakably within [the FLSA's] terms and spirit," *Solis*, 656 F.3d at 1083 (internal quotation marks omitted).

It is plausible to read the term "salesman" broadly and to connect the term to "servicing automobiles"; that is, one could consider a service advisor to be a "salesman . . . primarily engaged in . . . servicing automobiles." But, as explained in more detail below, in Part C, it is at least as plausible to read the nouns in a more cabined way: a salesman is an employee who sells cars; a partsman is an employee who requisitions, stocks, and dispenses parts; and

---

**[3]** The rule that courts should construe the FLSA's exemptions narrowly originated in *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). In recent years, the Supreme Court has clarified that the presumption applies only to the exemptions in § 213 and not more generally. *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 879 n.7 (2014); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2172 n.21 (2012).

a mechanic is an employee who performs mechanical work on cars. Service advisors do none of those things; they sell services for cars. They do not sell cars; they do not stock parts; and they do not perform mechanical work on cars.

It is not clear from the text of the statute whether Congress intended broadly to exempt any salesman who is involved in the servicing of cars or, more narrowly, only those salesmen who are selling the cars themselves. Certainly Congress did not exempt all employees of a car dealership; for example, a bookkeeper who tracks invoices for car sales and servicing is plainly not exempt, nor is a secretarial employee who routes calls to the salesmen, partsmen, and mechanics. Nor do canons of statutory interpretation aid Defendant. To the contrary, the § 213 "exemptions are narrowly construed against employers." *Haro*, 745 F.3d at 1256.

In sum, the statutory text and canons of statutory interpretation yield no clear answer to whether Congress intended to include service advisors within the exemption. Because Congress has not "directly spoken to the precise question at issue," *Chevron*, 467 U.S. at 842, the statute is ambiguous.

B.  Chevron *Provides the Appropriate Lens.*

When a statute is ambiguous, then we must determine, "prior to step two," the appropriate standard: either the *Chevron* test of reasonableness or a lower standard under *United States v. Mead Corp.*, 533 U.S. 218 (2001). *McMaster*, 731 F.3d at 889. Because we consider here a regulation duly promulgated after a notice-and-comment period, *Chevron*'s "reasonableness" standard applies. *See,*

*e.g.*, *Renee v. Duncan*, 623 F.3d 787, 795 (9th Cir. 2010) ("The challenged federal regulation interprets a federal statute. The regulation was adopted by the responsible federal agency through notice and comment rulemaking. We therefore apply the analytical framework outlined in *Chevron*.").

Nothing in the history of the regulation undermines that conclusion. Indeed, the original version of the regulation, promulgated in 1970, contained the same narrow definitions of "salesman," "partsman," and "mechanic." *See* 29 C.F.R. § 779.372(c)(1)–(3) (1970); *see also* Dep't of Lab., Wage & Hour Div., Opinion Letter No. 660, 66–69 Lab. Cas. (CCH) ¶ 30,652 (Aug. 4, 1967) (also providing the same narrow definitions). Those regulatory definitions have not changed in any relevant way since 1970. Because the agency's formal, regulatory position has not changed, the cases cited by Defendant are not on point. In *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2165 (2012), the Supreme Court addressed what level of deference to give to an agency's interpretation of its own regulations. Importantly, the parties agreed that "the regulations themselves . . . [were] entitled to deference under *Chevron*." *Id.* Similarly, *U.S. Steel*, 678 F.3d at 598–99, involved only opinion letters; the agency had not issued formal regulations.

It is true that the Department of Labor occasionally has adopted the broader definitions, urged by Defendant here, in documents other than regulations. For example, the agency issued an opinion letter in 1978 that defined a "salesman" to encompass service advisors. Dep't of Lab. Opinion Letter No. WH-467, 1978 WL 51403 (July 28, 1978). Similarly, the agency amended its Field Operations Handbook in 1987 along the same lines. Field Operations Handbook, Dep't of

Lab., Wage & Hour Div., 24L04-4, Insert No. 1757 (Oct. 20, 1987).

The agency even proposed amending the formal regulation to adopt the broader definitions. 73 Fed. Reg. 43,654-01, 43,658–59, 43,671 (July 28, 2008). But it ultimately decided *against* making that change after receiving comments from the public and considering the relevant court decisions. 76 Fed. Reg. at 18,838. The agency "acknowledge[d] that there are strongly held views on several of the issues presented in this rulemaking, and it has carefully considered all of the comments, analyses, and arguments made for and against the proposed changes in developing this final rule." *Id.* at 18,832. The regulatory history shows that the Department of Labor has given this particular issue considerable thought and has concluded that the better reading of the statute is to "limit[] the exemption to salesmen who sell vehicles and partsmen and mechanics who service vehicles." *Id.* at 18,838.

Moreover, even if we were to consider the agency's 2011 final rule a change of position, we still would conclude that *Chevron* supplies the appropriate standard of deference. As the Supreme Court explained in *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009), an agency is permitted to change its position. Consistent with *Fox*, the agency here expressly acknowledged that its position was contrary to its earlier opinion letter, and the agency rationally explained why, in its view, the court decisions to the contrary were erroneous. Under *Fox*, 556 U.S. at 515–18, nothing more is required. *Cf. Perez v. Mortg. Bankers Ass'n*, No. 13-1041, 2015 WL 998535 (U.S. Mar. 9, 2015) (holding that an agency may change its position in an interpretive rule without notice and comment).

The Department of Labor's regulations consistently—for 45 years—have interpreted the statutory exemption to apply narrowly. The agency reaffirmed that interpretation most recently in 2011, after thorough consideration of opposing views and after a formal notice-and-comment process. Under these circumstances, *Chevron* provides the appropriate legal standard.

C. *At* Chevron *Step Two, the Regulation Is Reasonable.*

"Under *Chevron* step two, if the agency's interpretation is a reasonable one, this court may not substitute its own construction of the statutory provision." *CHW W. Bay v. Thompson*, 246 F.3d 1218, 1223 (9th Cir. 2001) (brackets and internal quotation marks omitted). Here, the Department of Labor has interpreted the statutory exemption to exclude service advisors by choosing the narrower definition of the term "salesman." For the reasons described below, we conclude that the agency has made a permissible choice. The interpretation accords with the presumption that the § 213 exemptions should be construed narrowly. *Haro*, 745 F.3d at 1256. Moreover, we are mindful of our role as a reviewing court: "The agency's interpretation need not be the best construction of the ambiguous statute." *Cervantes v. Holder*, 772 F.3d 583, 591 (9th Cir. 2014).

We recognize that our decision to uphold the agency's interpretation conflicts with decisions of the Fourth and Fifth Circuits, several district courts, and the Supreme Court of Montana. *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446 (4th Cir. 2004); *Brennan v. Deel Motors, Inc.*, 475 F.2d 1095 (5th Cir. 1973); *Brennan v. N. Bros. Ford, Inc.*, No. 40344, 1975 WL 1074 (E.D. Mich. Apr. 17, 1975) (unpublished), *aff'd sub. nom Dunlop v. N. Bros. Ford, Inc.*, 529 F.2d 524 (6th

Cir. 1976) (table); *Brennan v. Import Volkswagen, Inc.*, No. W-4982, 1975 WL 1248 (D. Kan. Oct. 21, 1975) (unpublished); *Yenney v. Cass Cnty. Motors Co.*, No. 76-0-294, 1977 WL 1678 (D. Neb. Feb. 8, 1977) (unpublished); *Thompson v. J.C. Billion, Inc.*, 294 P.3d 397 (Mont. 2013). We respectfully disagree with those decisions.

In *Deel Motors* and the district court opinions following that case in the 1970s, courts held that service advisors are exempt because their duties and pay structure are "functionally similar" to those of the salesmen, partsmen, and mechanics whom the statute expressly exempts. 475 F.2d at 1097. But those cases pre-dated *Chevron* and the modern framework for deferring to an agency's interpretation. *See id.* (asking not whether the agency's interpretation was reasonable but, instead, determining for itself "the best interpretation," "the better reasoned interpretation," and "a common sense interpretation"); *see also id.* at 1098 (concluding that "[t]he intended scope of [the exemption] is not entirely clear" but not considering deference to the agency's position). In that regard, we agree with the Fourth Circuit that "[the] 'functionally similar' inquiry cannot be squared with FLSA's plain statutory and regulatory language." *Walton*, 370 F.3d at 451. Nothing in the statutory text suggests that Congress meant to exempt salesmen, partsmen, mechanics, and any other employees with functionally similar job duties and pay structure; the text exempts only certain salesmen, partsmen, and mechanics.

The closer question is whether the agency's interpretation is unreasonable because it is unduly restrictive, as the Fourth Circuit held in *Walton* and the Montana Supreme Court held

in *Thompson*.**⁴**  Those courts read § 213(b)(10)(A) as follows: "any salesman, partsman, or mechanic primarily engaged in [the general business of] selling or service automobiles." Service advisors are "salesmen" because their job is to sell services for cars.  And service advisors are involved in the general business of "servicing automobiles," because their role is to help customers receive mechanical work on their cars.  Accordingly, service advisors fall within the statutory definition.  In effect, those courts held that that is the only reasonable reading of the statute.

The agency reads the statute differently:  "any salesman, partsman, or mechanic primarily [and personally] engaged in selling or servicing automobiles."  Service advisors may be "salesmen" in a generic sense, but they do not personally sell cars and they do not personally service cars.  Accordingly, service advisors fall outside the statutory definition.  In effect, the agency reads the statute as exempting salesmen who sell cars and partsmen and mechanics who service cars.

The Fourth Circuit rejected that interpretation as unreasonable because, with respect to "salesman," it purportedly reads out of the statute the second half of the disjunctive clause "'selling *or servicing automobiles*.'" *Walton*, 370 F.3d at 452 (emphasis by *Walton*) (quoting § 213(b)(10)(A)); *see also Thompson*, 294 P.3d at 402 ("A plain, grammatical reading of [the statute] makes clear that the term 'salesman' encompasses a broader category of employees than those only engaged in selling vehicles" because of "[t]he use of the disjunctive 'or' between the

---

**⁴** *Walton* considered the issue at *Chevron* step two, whereas *Thompson* considered the issue at *Chevron* step one.  Otherwise, the reasoning of both courts is largely the same.

words 'selling *or* servicing'"). The Fourth Circuit's point is that, when Congress uses a list of disjunctive subjects (here, "salesman, partsman, or mechanic") followed by a list of disjunctive verbs (here, "selling or servicing"), the ordinary interpretation of that construction is that each subject is linked with each verb. For example, if someone says, "if my dogs or cats are eating or drinking, then I know not to pet them," we understand that phrase to be all-encompassing: the speaker refrains from petting a dog that is eating or drinking and a cat that is eating or drinking. It would contravene the speaker's intent to include, for example, only cats that were eating but to exclude dogs that were eating.

Critically, however, that analysis depends on context. Consider this slightly modified hypothetical: "if my dogs or cats are barking or meowing, then I know that they need to be let out." The Fourth Circuit's grammatical interpretation of that phrase would include a meowing dog and a barking cat. But most English speakers would interpret the sentence to refer only to a barking dog and a meowing cat. At a minimum, that implicit limitation would offer a reasonable interpretation of the speaker's intent.

Returning to the statute at hand, the agency's interpretation is reasonable. A natural reading of the text strongly suggests that Congress did not intend that both verb clauses would apply to all three subjects. For example, it is hard to imagine, in ordinary speech, a "mechanic primarily engaged in selling . . . automobiles." That is, it seems that Congress intended the subject "mechanic" to be connected to only one of the two verb clauses, "servicing." The nature of the word "mechanic" strongly implies the actions that the person would take—servicing. *See American Heritage College Dictionary* 842 (3d ed. 2000) (defining "mechanic"

as a "worker skilled in making, using, or repairing machines, vehicles, and tools"). The same can be said of the subject "salesman." It is hard to imagine, in ordinary speech, a "salesman . . . primarily engaged in . . . servicing automobiles." Congress likely intended the subject "salesman" to be connected to only one of the two verb clauses, "selling." The nature of the word "salesman" strongly implies the actions that the person would take—selling. *See id.* at 1203 (defining "salesman" as a "man who sells merchandise").

It is important to note that the agency's reading does not render any term meaningless or superfluous. All three subjects (salesman, partsman, and mechanic) and both verbs (selling and servicing) retain meaning; it is just that some of the verbs do not apply to some of the subjects. If the agency read out a word altogether, its interpretation likely would be unreasonable. *See, e.g.*, *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 966 (9th Cir. 2013) ("It is a well-established rule of statutory construction that courts should not interpret statutes in a way that renders a provision superfluous."), *cert. denied*, 134 S. Ct. 906 (2014). But the regulation does not run afoul of that doctrine.

Non-textual indicators of congressional intent, such as legislative history, are inconclusive. *See Fournier v. Sebelius*, 718 F.3d 1110, 1123 (9th Cir. 2013) (holding that, at *Chevron* step two, "legislative history permissibly may be considered"), *cert. denied*, 134 S. Ct. 1501 (2014). We have found no mention, in the relevant reports or hearings, of service advisors, by name or by role. All references to "salesman" appear to refer to an employee who sells cars only. *See, e.g.*, 112 Cong. Rec. S20,504 (Aug. 24, 1966) (statement of Sen. Yarborough) ("It would not affect the

salesman.  He can go out and sell an Oldsmobile, a Pontiac, or a Buick all day long and all night."); *id.* ("The salesman tries to get people mainly after their hours of work.  In some cases a man will leave his job, get his wife, and go to look at automobiles.  So the hours of a salesman are different.").

In 1961, Congress exempted "any employee" of a car dealership.  29 U.S.C. § 213(a)(19) (1961); Pub. L. No. 87-30, § 9, 75 Stat. 65 (1961).  A few years later, the Eighty-Ninth Congress considered three bills on this topic.  The first bill, introduced in 1965, would have repealed altogether the exemption for employees of dealerships.  H.R. 8259, 89th Cong. § 305 (introduced in House on May 18, 1965).  The next bill, also introduced in 1965, would have exempted from overtime requirements "any salesman or mechanic employed by" a car dealership.  H.R. 10,518, 89th Cong. § 209 (introduced in House on Aug. 17, 1965); H.R. 10,518, 89th Cong. § 209 (reported in House on Aug. 25, 1965).  Neither of those bills passed.

The final bill—H.R. 13,712—was enacted into law on September 23, 1966.[5]  The first three versions, introduced in the first half of 1966, exempted either "any salesman or

---

[5] Defendant cites recent actions by the House of Representatives' Committee on Appropriations in an apparent attempt to prevent enforcement by the agency of the 2011 rule.  That appropriations rider is not relevant.  What one house of Congress thinks, in the 2010s, about enforcement priorities for the agency is entirely uninformative about the intent of Congress when it enacted a statute in 1966.  Moreover, enforcement priorities do not change the content of the statute.  If the Appropriations Committee were to instruct, for instance, that it did not want money spent on enforcing the statutes forbidding cultivation of fewer than five marijuana plants on federal lands, such cultivation would not become lawful.

mechanic" or "any salesman, mechanic, or partsman" employed by a car dealership. H.R. 13,712, 89th Cong. § 209 (introduced in House on Mar. 16, 1965); *id.* (reported in House on Mar. 29, 1966); *id.* (referred in Senate on May 27, 1966). The final three versions all qualified the list of employees with the phrase, "primarily engaged in selling or servicing automobiles." *Id.* (reported in Senate on Aug. 23, 1966); *id.* (ordered to be printed in Senate on Aug. 25, 1966); Pub. L. No. 89-601 (Sept. 23, 1966). We know, then, that sometime in 1966 between May 27 and August 23, the Senate added that phrase. Unfortunately, the legislative history is silent on its meaning. *See, e.g.*, 112 Cong. Rec. H21,940 (Sept. 7, 1966) (House Conference Report: "The conference substitute conforms to the House provision regarding partsmen, except that such exemption shall be available only to salesmen, partsmen, and mechanics primarily engaged in selling or servicing such vehicles."); 112 Cong. Rec. S22,651 (Sept. 14, 1966) ("The resulting language follows the House exemption—including the Senate floor amendment—but with a somewhat narrower scope."); Sen. Comm. on Lab. & Pub. Welf., Report No. 1487, p. 14, 89th Cong. (Aug. 23, 1966) ("Committee Report") ("Section 13(b) is amended to provide an overtime exemption for salesmen and mechanics who are primarily engaged in selling or servicing automobiles . . . .").

The only possible exception, noted by *Deel Motors*, 475 F.2d at 1097 n.2, is found in the Committee Report on August 23, 1966:

> It is the intent of this exemption to exclude from the coverage of section 7 all mechanics and salesmen (other than partsmen) employed by an automobile, trailer, truck, farm implement or aircraft dealership even if they

> work in physically separate buildings or areas, or even if, though working in the principal building of the dealership, their work relates to the work of physically separate buildings or areas, so long as they are employed in a department which is functionally operated as part of the dealership.

Committee Report at 32. The Fifth Circuit quoted selectively from that passage for the proposition that the committee intended to exempt all mechanics and salesmen. *Deel Motors*, 475 F.2d at 1097 n.2. But the quoted passage also is found in earlier committee reports, which were written *before* the limiting phrase was added. *E.g.*, Sen. Comm. on Educ. & Lab., Report No. 871, p. 38, 89th Cong. (Aug. 25, 1965). Because the passage appeared both before and after the addition of the "primarily" proviso, the best reading of that passage is that the committee was addressing what provisions apply to employees who work in separate buildings, not what types of salesmen are exempt.

In sum, there are good arguments supporting both interpretations of the exemption. But where there are two reasonable ways to read the statutory text, and the agency has chosen one interpretation, we must defer to that choice. *Chevron*, 467 U.S. at 844. Accordingly, we hold that Plaintiffs are not exempt under 29 U.S.C. § 213(b)(10)(A).

Dismissal of claims 3, 5, and 7 **AFFIRMED**; dismissal of claim 1 and the supplemental state-law claims **REVERSED**; case **REMANDED**. Costs on appeal awarded to Plaintiffs.