DA 12-0244

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 20

ROBERT THOMPSON,

        Plaintiff and Appellant,

    v.

J.C. BILLION, INC., and MONTANA
DEPARTMENT OF LABOR AND INDUSTRY,

        Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. ADV 11-728
                    Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Geoffrey C. Angel; Angel Law Firm; Bozeman, Montana

        For Appellees:

                Lyman H. Bennett, III; Attorney at Law; Virginia City, Montana

        For Amicus Curiae:

                Bruce Spencer; Smith Law Firm, P.C.; Helena, Montana;
                (*Automobile Dealers Association*)

                              Submitted on Briefs:  October 10, 2012
                                      Decided:  January 29, 2013

Filed:

                    _____

                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Robert Thompson (Thompson) appeals from the Order entered by the First Judicial District Court affirming the Department of Labor & Industry's (Department) denial of his claim for overtime compensation against J.C. Billion, Inc. (Billion). We affirm and address these issues:

¶2 *1. Did the District Court err by concluding that Billion did not waive its argument that Thompson was exempt from overtime pay as a "salesman" under 29 U.S.C. § 213(b)(10)?*

¶3 *2. Did the District Court err by concluding that Thompson was not entitled to overtime pay under the Fair Labor Standards Act and the Montana Wage Protection Act?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 From March 1, 2009, until July 31, 2010, Thompson worked as the manager of Billion's "Pit Stop." The Pit Stop was the automotive services and repair facility within Billion's automotive dealership operation. During his tenure as manager of the Pit Stop, Thompson worked 819.21 hours in excess of the standard 40-hour work week, but did not receive overtime pay under his employment contract.

¶5 Thompson's duties as manager of the Pit Stop required that he greet customers; inspect vehicles, tires, and alignment; write up work tickets; "up sell" products; show customers to the waiting room; review a "report card" on the vehicle with the customer

2

and provide an estimate for additional work that may need to be done; check the car and deliver it to the waiting customer; and collect payment from the customer. Thompson also oversaw the quality of work performed by the "lube techs" who worked on customer vehicles. Although titled a "manager," Thompson did not have the independent authority to hire, discipline or promote workers.

¶6 Thompson was paid a base salary of $800 per month plus commission. If his combined salary and commission did not exceed $2,400.00 per month, he would receive a guaranteed salary of $2,400.00. Thompson also received an annual bonus and $1 for every "report card" issued. His bonus for 2009 was $2,000.00.

¶7 Thompson resigned his employment on July 31, 2010. He filed a claim for overtime pay with the Department several months later, asserting that Billion owed him $17,014.99 in overtime wages. Billion responded that Thompson was not entitled to overtime because he was (1) a "managerial" or executive employee and (2) a "salesperson" of automobiles services, two positions that are exempt under overtime compensation laws. Thompson countered that he was not a manager because he did not direct the work of the other employees, and was not a "salesperson" because, in his view, the majority of his workday was spent performing "lube, oil, and filter tasks" rather than selling products or services. After review of the information submitted by the parties, the Department's Compliance Specialist ruled in favor of Billion. Thompson requested a hearing.

¶8 A hearing was held on May 3, 2011, with both parties represented by counsel. Thompson and three Billion employees testified. Billion elicited testimony that "70 percent of Thompson's job was selling," and Thompson agreed that "most of [his] time was at the counter and selling." The hearing officer found that "Thompson's primary duty was to sell services to Billion's Pit Stop customers" and that it was "clear Thompson was a salesman and service advisor for J.C. Billion." The hearing officer concluded that because Thompson was a salesman for an automotive dealership, he was not entitled to overtime pay under federal or state law.[1]

¶9 Thompson petitioned the District Court for judicial review. Thompson argued that the Department procedurally erred by allowing Billion to assert the "salesman" exemption because Billion did not timely raise the issue. The District Court held that Billion had not waived this defense. Thompson also argued the Department should have granted him relief by applying 29 C.F.R. § 779.372(c)(1). The District Court concluded that this regulation impermissibly conflicted with 29 U.S.C. § 213(b)(10)(A), the federal statute it purported to interpret, reasoning:

> [T]he regulation clearly provides for a more narrow definition of salesman than that found in the statute. Therefore, this Court finds that the regulation is not controlling with regard to Thompson's claim, and the hearing examiner correctly applied the statutory language in determining that Thompson is exempt from the overtime pay requirements of both the FLSA and Montana wage and hour statutes.

¶10 Thompson appeals.

---

[1] The hearing officer also found that Thompson was not exempt from overtime as a manager or executive employee because his "primary duties" were sales and not management of the Pit Stop. Billion did not cross appeal this determination.

4

**STANDARD OF REVIEW**

¶11    Whether an administrative regulation impermissibly conflicts with a statute is a question of law to be decided by the court. *Chevron v. Nat. Resources Def. Council*, 467 U.S. 837, 842-43 n. 9, 104 S. Ct. 2778, 2781 n. 9; *Bona v. Gonzales*, 425 F.3d 663, 668 (9th Cir. 2005). We review a district court's conclusions of law de novo to determine if they are correct. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S. Ct. 2541, 2546 (1988); *Talon Plumbing & Heating v. Dept. of Lab. & Indus.*, 2008 MT 376, ¶ 19, 346 Mont. 499, 198 P.3d 213.

**DISCUSSION**

¶12    *1. Did the District Court err by concluding that Billion did not waive its argument that Thompson was exempt from overtime pay as a "salesman" under 29 U.S.C. § 213(b)(10)?*

¶13    Thompson briefly argues the District Court erred by permitting Billion to claim that Thompson was exempt from overtime pay as a "salesman." According to Thompson, Billion's failure to raise the exemption immediately prior to or during the administrative hearing "surprised" and "prejudice[d]" Thompson, and the defense should have been held to be waived.

¶14    In the context of judicial proceedings, an affirmative defense must be pleaded in the answer to the claim or it is waived. Fed. R. Civ. P. 8(c); *Marias Healthcare Serv. v. Turenne*, 2001 MT 127, ¶ 9, 305 Mont. 419, 28 P.3d 491. The purpose of requiring affirmative defenses to be pleaded is to give the opposing party notice of the defense and

5

a chance to argue why imposition of the defense would be inappropriate. *Blonder-Tongue Lab. v. U. of Ill. Found.*, 402 U.S. 313, 350, 91 S. Ct. 1434, 1453 (1971). Title 29 U.S.C. § 213(b) enumerates certain employment positions that are exempt from overtime-pay laws. The Ninth Circuit has held that such exemptions are "affirmative defense[s] that must be pleaded and proved by the defendant." *Magana v. Com. of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997). However, as the District Court noted, this is a function of the federal rules of civil procedure. Generally, the rules of civil procedure do not apply with equal force to administrative proceedings:

> The strict technical rules governing judicial procedure generally do not apply to administrative proceedings which are simpler, less technical, and less formal than court proceedings, but the elementary fundamental principles of judicial inquiry should be observed in administrative proceedings. . . . Under this general rule, for example, the validity of pleadings in administrative proceedings should not be tested by technical niceties of pleading and practice required in court trials.

73 C.J.S. *Public Administrative Law and Practice* § 142 (2004); *accord U.S. v. Rasmussen*, 222 F. Supp. 430, 438 (D. Mont. 1963) (Jameson, J.) ("Administrative procedures need not conform to all procedural niceties that surround the judicial process.").

¶15 The administrative process for review of wage claims is governed by rules adopted by the Department pursuant to statutory authority. Section 39-3-202, MCA; Admin. R. M. 24.16.7501, et seq. Pursuant thereto, an employer is required to file a "written response" to a wage claim, but the particular contents of that response is not addressed by the rule. Admin. R. M. 24.16.7527(2). A party who receives an adverse ruling from a

compliance specialist may file a simple request for a formal hearing, which is governed by the statutes governing contested case proceedings. Admin. R. M. 24.16.7537; Section 2-4-601, et seq. Thompson has not pointed to any violation of these provisions by Billion.

¶16 The record indicates that Thompson filed his wage claim with the Department on October 25, 2010. In its "written response" to Thompson's claim, Billion asserted that the salesman exemption applied. In reply, Thompson sent a letter refuting his classification as a "salesman," stating he spent the majority of his workday performing "lube, oil, and filter tasks" along with the other Pit Stop laborers. This prompted the Department's compliance specialist to write a letter to Billion asking for clarification regarding Thompson's day-to-day duties. Billion responded, contesting Thompson's characterization of his duties and reaffirming its position that Thompson was a "'salesperson' selling automobile service [sic] to our customers." This prompted another response from Thompson that "J.C. Billion cannot meet its burden to prove Thompson is an exempt 'salesperson'" because § 779.372(c)(1) defined a "salesperson" only as an employee selling vehicles.

¶17 This correspondence demonstrates that Billion raised the "salesman" defense early in the proceedings and clearly put Thompson on notice of its position that it would rely on the "salesman" exemption, in addition to other defenses. Prior to the hearing, Thompson objected that Billion had not raised any affirmative defenses, but this

objection was properly denied. Thompson was not surprised or prejudiced. The District Court did not err by denying Thompson's waiver argument.

¶18     *2. Did the District Court err by concluding that Thompson was not entitled to overtime pay under the Fair Labor Standards Act and the Montana Wage Protection Act?*

¶19     Federal and Montana law entitles an employee, unless exempted, to receive overtime pay for hours worked in excess of 40 in a workweek at a rate not less one-and-one-half times his regular rate of pay. 29 U.S.C. § 207(a)(1) (2006); § 39-3-405, MCA (2009). Federal and Montana law exempt from the overtime pay requirement a "salesperson" engaged in "selling or servicing automobiles" if employed at an automotive dealership. 29 U.S.C. § 213(b)(10)(A); § 39-3-406(2)(d). Specifically, 29 U.S.C. § 213(b)(10)(A) provides that overtime pay requirements do not apply to:

> any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers[.][2]

This exemption from overtime pay as defined under Montana law, § 39-3-406(2)(d), is substantially the same, with the italicized words below being the only differences:

> a salesperson, parts person, or mechanic *paid on a commission or contract basis* and primarily engaged in selling or servicing automobiles, trucks, *mobile homes, recreational vehicles*, or farm implements if the salesperson, parts person, or mechanic is employed by a nonmanufacturing

---

[2] Thompson worked at the "Pit Stop" but, as noted above, this facility was not separate from Billion's dealership operation. The District Court noted that "[n]either party raises an issue as to J.C. Billion's status as a nonmanufacturing vehicle dealership, nor of the Pit Stop's status as a part of Billion's overall operation and not a separate business or legal entity."

8

establishment primarily engaged in the business of selling the vehicles or implements to ultimate purchasers[.][3]

¶20 Four years after Congress passed 29 U.S.C. § 213(b)(10), the Secretary of the United States Department of Labor (Secretary) issued 29 C.F.R. § 779.372. 35 Fed. Reg. 5395, 5396 (April 9, 1970). Section 779.372(c)(1) defined "salesman" to include only those employees who sold vehicles:

> As used in section 13(b)(10), a salesman is an employee who is employed for the purpose of and is *primarily engaged in making sales or obtaining orders or contracts for sale of the vehicles or farm implements* which the establishment is primarily engaged in selling.

(Emphasis added.)[4] The Secretary has subsequently explained that this narrowing was premised "on its reading of 13(b)(10)(A) as limiting the exemption to salesman who sell vehicles and partsmen and mechanics who service vehicles." 76 Fed. Reg. 18838 (April 5, 2011). Thus, regarding employees of vehicle dealerships, Regulation § 779.372

---

[3] Thompson argues that the Montana statutory exemption should be "more narrowly construed" than the federal exemption, but offers no viable distinction between the two. Given the nearly identical terms used by the statutes, we apply the same analysis under both provisions.

[4] In conjunction with Regulation 779.372(c)(1), the Secretary also promulgated corresponding Regulation § 779.372(c)(4), which provided:

> Employees variously described as service manager, service writer, service advisor, or service salesman who are not themselves primarily engaged in the work of a salesman, partsman, or mechanic as described above are not exempt under section 13(b)(10). This is true despite the fact that such an employee's principal function may be diagnosing the mechanical condition of vehicles brought in for repair, writing up work orders for repairs authorized by the customer, assigning the work to various employees and directing and checking on the work of mechanics.

35 Fed. Reg. 5396 (April 9, 1970).

9

exempts salesmen of vehicles, and partsmen and mechanics who service vehicles, from the overtime pay requirement, but not salesmen of vehicle services.

¶21 Acknowledging that FLSA overtime pay exemptions are to be narrowly construed against the employer, *Kemp v. State Bd. of Personnel Appeals*, 1999 MT 255, 292 Mont. 319, 989 P.2d 317, the District Court also reasoned that "regulations are not controlling if they conflict with the plain wording of the statute." The court rejected application of Regulation § 779.372(c)(1) on a plain reading comparison of the regulation and the statute, and by reliance on the U.S. Circuit Court decisions in *Brennan v. Deel Motors, Inc.*, 475 F.2d 1095 (5th Cir. 1973) and *Walton v. Greenbriar Ford, Inc.*, 370 F.3d 446 (4th Cir. 2004). Those courts concluded that the regulation conflicted with the statute. The *Walton* Court reasoned as follows:

> [T]he Secretary's interpretation of [the term "salesman"] is unreasonable, as it is an impermissibly restrictive construction of the statute. FLSA itself exempts any salesman "primarily engaged in selling *or servicing automobiles*" from the overtime requirements. 29 U.S.C. § 213(b)(10)(A) (emphasis added). However, the regulation conflicts with FLSA's statutory mandate in that it restricts the definition of "salesman" to those employees "primarily engaged in making sales or obtaining orders or contracts for *sales of the vehicles*." 29 C.F.R. § 779.372(c)(1) (emphasis added). Because that restrictive regulatory definition of "salesman" unreasonably implements the congressional mandate, we reject the Secretary's interpretation in 29 C.F.R. § 779.372(c)(1).

¶22 Thompson argues the District Court erred by following *Walton* instead of the regulation. He urges us to reject *Walton* in light of the Supreme Court's directive to defer to agency definitions, as stated in *Chevron v. Nat. Resources Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984) and *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158,

10

127 S. Ct. 2339 (2007). *Chevron* was a seminal case in which the Supreme Court outlined a two-step framework for judicial review of an agency's interpretation of a federal statute. Under *Chevron* step one, a court must determine whether the statute speaks directly to the precise question at issue; if it does, the court must "give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43, 104 S. Ct. at 2781. However, if the statute is "is silent or ambiguous" as to the question at issue, the court proceeds to *Chevron* step two where it defers to a reasonable construction of the statute by the agency charged with its implementation. *Chevron*, 467 U.S. at 843, 104 S. Ct. at 2781-82. *Chevron* step one requires a reviewing court to "employ[] traditional tools of statutory construction" to ascertain whether Congress answered the question at issue. *Chevron*, 467 U.S. at 843 n. 9, 104 S. Ct. at 2781 n. 9.[5]

¶23 A plain, grammatical reading of 29 U.S.C. § 213(b)(10)(A) makes clear that the term "salesman" encompasses a broader category of employees than those only engaged in selling vehicles. The statute exempts "any salesmen, partsmen, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements[.]" 29 U.S.C. § 213(b)(10). The use of the disjunctive "or" between the words "selling *or* servicing" means that the exemption applies to any "salesman, partsmen, or mechanic" who are

---

[5] We have also long adhered to "ordinary rules of grammar" when construing a statute according to its plain meaning. *Jay v. Sch. Dist. No. 1 of Cascade Co.*, 24 Mont. 219, 224-25, 61 P. 250, 252 (1900); *see also Missoula High Sch. Legal Def. Assn. v. Superintendent of Pub. Instr.*, 196 Mont. 106, 110, 637 P.2d 1188, 1191 (1981). Generally, we turn to other modes of statutory construction, such as legislative history, only when a plain reading of the statute leaves the question presented unanswered. *See Van der hule v. Mukasey*, 2009 MT 20, ¶ 14, 349 Mont. 88, 217 P.3d 1019 (concluding that because the plain language of the statute answered the question raised in certified question, "we need not go on to employ other methods of statutory interpretation.").

primarily engaged in either of these duties. The use of the disjunctive "or" among "automobiles, trucks, *or* farm implements" applies the exemption to employees selling or servicing any of these kinds of vehicles.[6] Therefore, under a plain reading, the statute clearly exempts "any salesman . . . primarily engaged in servicing . . . automobiles."

¶24 Thompson's reliance on *Chevron* and *Long Island Care* is unavailing because those cases involved regulations that defined statutory terms in a way that did not conflict with the controlling statute. In other words, they are *Chevron* "step two" cases. In *Chevron*, the statutory term at issue was "stationary source" from the Clean Air Act. *Chevron*, 467 U.S. at 840, 104 S. Ct. at 2780. The Supreme Court upheld the EPA's definition as a "permissible construction of the statute" because it did not conflict with the language of the statute and did not frustrate the objectives of Congress. *Chevron*, 467 U.S. at 866, 104 S. Ct. at 2793. The statutory terms at issue in *Long Island Care* were "domestic service employment" and "companion services" of the Fair Labor Standards Act (FLSA). *Long Island Care*, 551 U.S. at 161-62, 127 S. Ct. at 2344. The FLSA exempted employees engaged in providing in-home companion care for elderly and disabled people from minimum wage and maximum hour requirements. *Long Island Care*, 551 U.S. at 161-62, 127 S. Ct. at 2344. The U.S. Department of Labor issued a regulation defining "domestic service employment" to include third-party workers— those employed by agencies in the businesses of providing companion services to numerous clients. *Long Island Care*, 551 U.S. at 163, 127 S. Ct. at 2345. The Supreme

---

[6] Under the Montana statute, the exemption is additionally applied to employees who sell or service "mobile homes" and "recreational vehicles." Section 39-3-406(2)(d), MCA.

Court upheld this regulatory definition because it did not contradict the statutory language of the FLSA. *Long Island Care*, 551 U.S. at 167, 127 S. Ct. at 2347. However, in this case, unlike *Chevron* and *Long Island Care*, Regulation § 779.372(c)(1) conflicts with the plain wording of 29 U.S.C. 213(b)(10)(A) by defining employees who are exempted from overtime pay as "salesman" more narrowly than the statute does.

¶25    Billion and Thompson also argue about the effect of the Secretary's inconsistent enforcement of § 779.372(c)(1) over the past 40 years.[7] However, it is not necessary to address this concern. Because we conclude that § 213(b)(10)(A) resolves the dispute, the regulation carries no weight. Under *Chevron* step one, if a plain reading of the statute answers the question, it is not necessary to further analyze the effect of the regulation. *Chevron*, 467 U.S. at 842-43, 104 S. Ct. at 2781 ("If the intent of Congress is clear, that is the end of the matter[.]"); *Village of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 659 (D.C. Cir. 2011) ("Because at *Chevron* step one we alone are tasked with determining Congress's unambiguous intent, we [analyze the statute] without showing the agency any special deference.").

---

[7] After promulgating the narrower definition of "salesman" in 1970, the Secretary issued a policy letter in 1978 purporting to change its position by including certain "salesman" who sell automotive services. *See* Dept. of Lab. Opinion WH-467, signed by Wage-Hour Administrator Xavier M. Vela, July 28, 1978, 1978 DOLWH LEXIS 22 **1-2 ("This position represents a change from the position set forth in [§ 779.372] . . . ."). In 1987, the Secretary amended the Department's Field Operations Handbook to direct agency workers to "no longer deny the [overtime] exemption for such employees." In 2011, the agency reverted back to the position articulated in § 779.372(c)(1): "Upon further consideration of the [salesman of services] issue, the Department has decided not to adopt the proposed change to § 779.372(c)(4) to specifically include service managers, service writers, service advisors, or service salesmen as qualified for the exemption. As commentators point out, the statute does not include such positions . . . ." 76 Fed. Reg. 18838 (April 5, 2011).

13

¶26    Affirmed.


/S/ Jim Rice


We concur:


/S/ Mike McGrath
/S/ Patricia O. Cotter
/S/ Beth Baker
/S/ Brian Morris

14